Barbour, J., (dissenting.)
The case, briefly stated, is this:
The ship Joseph Walker, while lying at the plaintiffs’ wharf, in Hew York, in December, 1853, with cargo on board, was partially burned, and sunk to the bottom, alongside the wharf, remaining attached thereto by her chain cable, leaving a portion of her hull above the water, and occupying such a position as to exclude all other vessels from access to that part of the wharf in front of which she lay. The injury to the vessel and cargo being more than half their value, they were abandoned by the owners to the defendants, who were insurers, as a total loss, under the policies; and the defendants, thereupon, accepted the abandonment and paid the insurance. The defendants did not abandon the ship and cargo as derelict, but, on the *393 contrary, entered into a contract with a Mr. Bell, an experienced wrecker, providing for the raising of the ship and cargo by him, in consideration of the payment to him of a large per centage of the proceeds to be derived from sales of the same when raised, or such portions thereof as-should be saved. Under this agreement, Bell, and Lewis', who became his partner and succeeded him, made various efforts, more or less vigorous, to raise and save the vessel and cargo. Those attempts were continued, with the exception of some intermissions on account of the weather, until April, 1855; during which period portions of the cargo were taken out, landed upon the plaintiffs’ wharf, and carried away and sold by the contractors, who also used the wharf as a passage way to and from the ship, for their men and materials. In April, 1855, the Mayor of the city, claiming that the vessel was a public nuisance there, forcibly stopped the proceedings of the contractors, took possession of the ship, and entered into a contract with a Mr. Jones, who agreed to. raise and remove the vessel for $13,000, to be paid him by the city; and Jones, thereupon, sub-let the job to others, who undertook to raise and save the ship and cargo, and to receive as compensation therefor 50 per cent of the net proceeds of the vessel, and 62¿-per cent of her cargo. On the 15th of October, 1855, the Mayor again took possession of the ship, and on the 25th or 26th of the same month removed her from the dock; whence she was taken to the Atlantic docks, in Brooklyn. The vessel was then worth $10,000, and her cargo was sold for about $5,000.
It is not necessary to consider the question as to whether the underwriters,.upon the abandonment of the ship and cargo to them, and their acceptance of such abandonment, took the ownership of the same cum onere, so as to become, ipso facto, liable to the performance of all the duties aud obligations touching her future disposition, to which the insured owners were then subject; nor the question as to what the duties and liabilities of such former owners, considering the situation and condition of the ship, were, at *394 that time; for, even if they had the right, at their option, to abandon the vessel and her cargo as derelict, it is quite clear that they elected not to abandon, but to take possession of the vessel; and that for a year and two months after they became the owners, the defendants, through the persons with whom they had entered into a contract and formed a quasi partnership for that purpose, retained such possession and controlled and managed the vessel, not for the purpose of removing her from the slip at the earliest practicable period so as to release the plaintiffs’ wharf from the incumbrance, but with the intention, principally, if not solely, of saving the ship and cargo, with a view to the profit or remuneration to be derived from the sale of the same, to the exclusion of all other vessels from that portion of the .plaintiffs’ wharf, and to the great injury of his business.
If the defendants had abandoned the ship and cargo as derelict, the plaintiffs would have had a right to take possession, either for the purpose of removal as an obstruction to their wharf, or, in case it could be done without injury to others, in order to save the ship and cargo for their own benefit, if they should see fit so to do; and of this right they were deprived by the acts of the defendants and their employees in taking and holding exclusive possession of the vessel, not for the purpose of removing it out of the plaintiffs’ way, but of placing her and her cargo in such a condition as would, and did, enable the defendants to make money.
Tested by the rules of common honesty, it was the duty of the defendants, upon assuming the ownership and control of the vessel, either to remove her from the plaintiffs’ wharf, without unreasonable delay, as a wreck and an obstruction to their business there, or to compensate them for the injury caused by such obstruction. For nearly two years, owing to the failure of the defendants to remove her, the vessel continued to occupy the same position, though partially submerged, in front of the plaintiffs’ wharf, which she filled prior to the accident; and for this *395 the plaintiff is entitled to compensation. In Brown v. Mallett, (5 Com. B. R., 599; S. C., 12 Jur., 204,) a case somewhat similar to this, Justice Maul® said: “ The “liability of the owner is the same whether his vessel be in “motion or stationary, -floating or aground, underwater “or above it; in all these circumstances the vessel may “ continue to be in his possession and under his management “and controland “if so, he is liable for injuries caused “ by it;” and he repeats,, in effect, that where the control of the ship is retained, liability accompanies it.
The evidence in this case was sufficient, I think, to justify the Jury in finding, as a fact, that the ship could have been removed from the slip in a very short time time if the efforts of the defendants had been directed to such removal merely. One witness, an agent of a wrecking company, and himself a wrecker of considerable experience, says that the ship could have been taken out within two weeks after she was sunk. Lewis, one of the contractors, testifies, that in August, 1854, the ship was actually raised, so that when the tide rose she lifted free and clear; and that he could then have carried her anywhere in the harbor; and I think it may reasonably be assumed from his testimony that his failure to remove her at that time was induced by his desire to take, such further steps as would insure the safety of the vessel and the preservation of her cargo, out of which his compensation was to be derived. Even if this were otherwise, however, it appears to me that under the rule as laid down by Justice Maulé, the plaintiff was entitled to recover upon the evidence as it stood at the time the Judge, upon the trial of this action, directed the Jury to find a verdict for the defendant, or at least that the evidence was sufficient to require a finding of facts by them.
Eor these reasons, I am of opinion that the judgment should be reversed and a new trial granted.
Monell, J. concurred in the dissenting opinion of Barbour, J.
Judgment and order affirmed.